25CA1474 Marriage of Leslie 08-06-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1474
Pueblo County District Court No. 24DR514
Honorable Steven D. Laman, Magistrate

---

In re the Marriage of

Kristin Faith Leslie,

Appellee,

and

Jake Reese Leslie,

Appellant.

---

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE FREYRE
Johnson and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 6, 2026

---

Kristin Faith Leslie, Pro Se

Jake Reese Leslie, Pro Se

¶ 1    In this dissolution of marriage case between Jake Reese Leslie (father) and Kristin Faith Leslie (mother), father appeals the district court magistrate's allocation of parental responsibilities and income finding when determining child support. We affirm.

## I.    Background

¶ 2    The parties married in 2023, and they have a daughter together. Mother also has a young son from her previous marriage.

¶ 3    In 2025, the court dissolved the marriage and entered permanent orders. When allocating parental responsibilities, the court found that father had committed acts of domestic violence and noted its concerns with the daughter's safety in father's care. The court allocated mother primary parenting time and sole decision-making responsibility. It allowed father to exercise only supervised visits with their daughter.

¶ 4    As for child support, the court found that father's gross income was $3,384 per month and that mother's gross income was $3,038 per month. The court then ordered father to pay child support in the amount of $709 per month.

## II.   Allocation of Parental Responsibilities

¶ 5   Father contends that the district court erred by restricting his parenting time and allocating sole decision-making responsibility to mother.  We consider and reject his contentions.

### A.   Standard of Review

¶ 6   Allocating parental responsibilities is a matter within the sound discretion of the district court.  *In re Marriage of Collins,* 2023 COA 116M, ¶ 8 (parenting time); *In re Marriage of Morgan,* 2018 COA 116M, ¶ 23 (decision-making responsibility).  We will not disturb the court's allocation absent a showing that the court acted in a manifestly arbitrary, unreasonable, or unfair manner, or it misapplied the law.  *Collins,* ¶ 8.  We exercise every presumption in favor of upholding a court's parental responsibilities ruling and will affirm the court's decision when the record supports it.  *Id.* at ¶ 8; *Morgan,* ¶ 26.

¶ 7   We review de novo the court's application of the law.  *In re Marriage of Pawelec,* 2024 COA 107, ¶ 55.

### B.  Parenting Time Restriction

¶ 8    Father argues that the court improperly restricted his parenting time by not "expressly applying" the endangerment standard and making the necessary findings.  We disagree.

¶ 9    The court generally allocates parenting time based on the child's best interests.  *See* § 14-10-124(1.5)(a), C.R.S. 2025; *Collins*, ¶ 7.  When the court finds that a parent has committed domestic violence, it "shall consider, as the primary concern, the safety and well-being of the child and the abused party."  § 14-10-124(4)(d).[1]  The court may place conditions on parenting time to ensure the child's safety, and if it orders unsupervised parenting time, it must say why unsupervised parenting time is in the child's best interests.  § 14-10-124(4)(e), (9).

¶ 10    However, the court may not restrict a parent's parenting time unless it finds that parenting time would endanger the child's

---

[1] Effective May 27, 2026, section 14-10-124(4), C.R.S. 2025, was repealed, and the provisions concerning domestic violence were amended and relocated in the statute.  *See* Ch. 163, sec. 3, § 14-10-124, 2026 Colo. Sess. Laws 975-81.  Because the 2026 amendments do not affect our analysis, we continue to cite the 2025 version of section 14-10-124.

physical health or significantly impair the child's emotional development. § 14-10-124(1.5)(a); *see* § 14-10-129(1)(b)(I), C.R.S. 2025. What constitutes endangerment is a highly individualized determination. *In re Marriage of Wenciker*, 2022 COA 74, ¶ 26.

¶ 11    In its permanent orders, the court began by recapping the relevant evidence. It noted the following:

- A Colorado Springs police officer described responding to a 2023 domestic violence incident, in which father physically assaulted mother.

- The officer said that, during the physical altercation, father knocked over mother's son and that the officers had to use a taser on father to detain him.

- Mother testified that father's parenting time endangered their daughter's emotional development and presented a danger to her physical safety.

- She said that father should be able to exercise only supervised visitation with their daughter.

- She reported that father had (1) regularly physically abused her; (2) threatened to harm or kill himself; and

(3) told her that if she did not do as he wanted, he "couldn't control what he might do to" their daughter.

¶ 12　In addition, the court recognized that, during the pendency of the dissolution case, father had not exercised parenting time or video calls with the daughter despite invitations to do so from mother.  And it noted that, in the domestic relations case concerning mother and her ex-husband, mother's parenting time with her son was restricted because of her association with father.

¶ 13　The court found that father's actions toward mother constituted coercive control and that he had engaged in acts of domestic violence against her, including a criminal assault conviction related to the 2023 incident.  The court noted that, in the criminal case, father's probationary sentence required him to complete domestic violence treatment, and the court found that he had not complied with that requirement.  The court also found that there was a new pending criminal case concerning father's alleged domestic violence against his current partner and that his 2023 probationary sentence was pending revocation.

¶ 14　The court noted its safety concerns for the daughter while with father given the continuing allegations of domestic violence.  It also

said that it had "additional concerns regarding the safety of" the daughter in father's home due to a report that father's current partner, who resides in the home, recently attempted suicide. The court then found that it did "not believe that there are findings it [could] make which would alleviate the concerns of the [c]ourt regarding the safety of the child while in the custody of [father]." The court ordered father to exercise only supervised parenting time until he completes the necessary treatment related to his criminal cases, including domestic violence treatment.

¶ 15    Taken as a whole, the court's findings sufficiently demonstrate that, although not explicit, the court applied the endangerment standard and found, with record support, that parenting time with father would endanger the daughter's physical health or significantly impair her emotional development. *See* §§ 14-10-124(1.5)(a), 14-10-129(1)(b)(I); *see also In re Parental Responsibilities Concerning S.Z.S.*, 2022 COA 105, ¶ 23 (acknowledging that a court's findings concerning parental responsibilities may be implicit in its ruling); *In re Marriage of Rodrick*, 176 P.3d 806, 813-14 (Colo. App. 2007) (affirming a court's parental responsibilities decision when its findings, although not

specific, sufficiently showed that it considered the statutory criteria). And its findings concerning father's domestic violence, his coercive control, and the daughter's safety sufficiently explained the basis for restricting his parenting time. *See* § 14-10-124(1.5)(a) ("[I]n any order imposing or continuing a parenting time restriction, the court shall enumerate the specific factual findings supporting the restriction . . . .").

¶ 16 The court therefore did not misapply the law when it restricted father's parenting time.

### C. Decision-Making Responsibility

¶ 17 Father next asserts that "[b]ecause the supervised parenting-time restriction formed the basis for the allocation of parental responsibilities; the award of sole decision-making authority must also be reconsidered." As explained, we reject father's claim that the court improperly allocated parenting time. We thus necessarily reject his corresponding claim that decision-making responsibility must be reconsidered due to that purported error.

¶ 18 Moreover, when the court finds that a parent committed acts of domestic violence, it shall not be in the child's best interests to allocate joint decision-making responsibility over the other parent's

7

objection "unless the court finds that there is credible evidence of the ability of the parties to make decisions cooperatively in the best interest of the child in a manner that is safe for the abused party and the child." § 14-10-124(4)(a)(II)(A); *see Morgan*, ¶ 22.

¶ 19 Given father's domestic violence and mother's objection to shared decision-making responsibility, the court had to determine an appropriate allocation that primarily considered the safety of the daughter and mother. *See* § 14-10-124(4)(d). The court appropriately considered their safety and the daughter's best interests. *See* § 14-10-124(1.5)(a)-(b), (4)(b), (4)(d). Not finding that the parties could make joint decisions, the court allocated sole decision-making responsibility to mother. *See* § 14-10-124(4)(a)(II)(A); *Morgan*, ¶ 22.

¶ 20 To the extent father suggests that the court did not address every one of the statutory best interest factors, *see* § 14-10-124(1.5)(a)-(b), it was not required to do so, *see Pawelec*, ¶ 44. The court's ruling provided "a clear understanding of the basis of" its decision, and the record supports it. *Id.*; *see Morgan*, ¶ 26.

¶ 21 We therefore will not disturb the court's allocation of decision-making responsibility.

### III. Father's Gross Income

¶ 22    Father also contends that, when the court determined child support, it failed to explain how it found that father's gross income was $3,384 per month. We discern no error.

¶ 23    When determining child support, the court uses a party's actual gross income, which generally includes income from any source. *See* § 14-10-115(3)(c), (5)(a)(I), C.R.S. 2025. "In situations where a party's income fluctuates or there is conflicting evidence regarding the income amount, the district court may, in its discretion, consider and use an average of the party's past income." *In re Marriage of Capparelli*, 2024 COA 103M, ¶ 32.

¶ 24    We defer to the court's income findings unless the record does not support them. *Id.* at ¶ 30. And we will not disturb a court's child support decision absent a showing that it abused its discretion. *In re Marriage of Tooker*, 2019 COA 83, ¶ 12.

¶ 25    Mother argued that because father worked various odd jobs, his income varied each month and that averaging his monthly deposits into his bank account was the most appropriate way to determine his gross income. She asserted that those deposits averaged $3,943 per month.

¶ 26     In closing argument, father appeared to agree with her methodology but asserted that his "true average income" was $3,384 per month.  He then asked the court to calculate child support using this average amount as his monthly income.

¶ 27     The court agreed with father and found that his gross income was $3,384 per month.  Father cannot now dispute this income finding and take a position on appeal that is contrary to the one he took at the permanent orders hearing.  *See Roberts v. Am. Fam. Mut. Ins. Co.*, 144 P.3d 546, 549-50 (Colo. 2006) ("[A] party may . . . be estopped from asserting on appeal a position contrary to one he took at trial or in which he later acquiesced . . . ."); *see also In re Marriage of Huff*, 834 P.2d 244, 254 (Colo. 1992) ("The parties are responsible for the posture in which they have placed themselves and thus may not on appeal avoid the consequences that flow therefrom." (quoting *Millenson v. Dep't of Highways*, 590 P.2d 979, 983 (Colo. App. 1978))).  We therefore will not disturb the court's income finding.

## IV.   Disposition

¶ 28     The judgment is affirmed.

JUDGE JOHNSON and JUDGE KUHN concur.